IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | No. CR 08-0300-TUC-DCB (CRP) |
| ) | |
| vs. ) | |
| ) | REPORT AND |
| ) | RECOMMENDATION |
| MARTIN ESCARSEGA, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Pending before the Court is Defendant's First Motion to Suppress Evidence, the Government's Response, and Defendant's Reply. (Docs 9, 15, 16.) On June 5, 2008, this Court held a hearing on the Motions. It is the Report and Recommendation of this Court that the District Judge, after his independent review and analysis, DENY Defendant's Motion to Suppress Evidence.

In the Motion to Suppress, Defendant challenges: (1) whether border patrol agents received consent from Defendant to search the premises; and (2) if consent was given, whether it was given voluntarily. Defendant argues that border patrol agents unlawfully gained access to search the trailer, and seek to suppress all the evidence seized from the trailer.

## I. Evidentiary Hearing

The Court conducted an evidentiary hearing and heard arguments of counsel on June 5, 2008. (Doc 21.)[1] At the evidentiary hearing, the Government presented the testimony of Border Patrol Agent Shannon McCormick. Agent McCormick has worked as a border patrol agent for over eight years. Predominately, Agent McCormick works for the disrupt unit specializing in alien and narcotics trafficking.

During the evidentiary hearing, Agent McCormick testified about the events of February 13, 2008. On that day, Agent McCormick received a call from two agents concerning a white truck they had pulled over with an after-market compartment on the bottom of the vehicle. The agents did not locate any drugs, but instructed Agent McCormick to proceed to Menengers Dam on the Tohono O'odham Nation, which is the location from which the truck was traveling. Agent McCormick arrived at the location in question, and parked outside of the property. The property was outlined by a three wire fence which ran along three sides, leaving the entrance to the property open.

Agent McCormick arrived in an unmarked vehicle and was wearing a tactical vest with the words "United States Border Patrol" printed across the back. Border Patrol Agent Gardella arrived at the same time in a marked car. He was dressed in uniform. The Defendant approached the agents and engaged in a casual conversation. Upon conversing, Agent McCormick noticed some foot signs which indicated alien traffic through the area. Agent McCormick asked Defendant if he had seen any aliens, to which Defendant replied, that he had seen one or two. The agents walked along the outside of the property toward a wash following the foot signs. While walking the perimeter of the property, Agent McCormick noticed a trailer located on the property within close proximity to the fence. Agent McCormick could easily view the trailer from his location on the other side of the fence, outside of the property. Agent McCormick noticed the whole bottom side of the trailer had been freshly painted.

---

[1] Doc 21 refers to the Transcript from the Motion Hearing to Suppress. Hereafter, Doc 21 will be referred to as "Transcript."

1  Agent McCormick, while standing outside the property, asked Defendant who owned the trailer. Defendant informed him that he was borrowing the trailer from a friend named Floyd to haul away garbage from the property. Further investigation later revealed Defendant and his brother did not own the property but were legitimately staying overnight in a small shed on the property. After asking who owned the trailer, Agent McCormick asked permission to enter the property. Defendant granted permission for the agents to enter. Agent McCormick continued to question Defendant about the trailer. Defendant told the agent that he picked up the trailer that morning from Santa Rosa, which is approximately 100 miles from the property.

At the time of the questioning, the white truck earlier identified by border patrol agents arrived and it was being driven by Defendants' brother. Eventually, Agent McCormick ran the plates and discovered that Floyd Flores was the registered owner of both the trailer and the truck.

Agent McCormick informed Defendant that he was suspicious of an after-market compartment on the trailer and that he wished to perform a K-9 sniff. Defendant responded by giving the agent permission to proceed. At no point did Agent McCormick place either Defendant or his brother under arrest, tell them they were not free to leave, or display his weapon.

Approximately 45 minutes later the K-9 unit arrived. During the intervening 45 minutes, Agent McCormick confirmed that Floyd Flores was the registered owner of the car. Meanwhile, Defendant and his brother were inside the small shed eating dinner. During the walk around the trailer, the K-9 unit alerted the officers to the back of the trailer. Agent McCormick asked permission from Defendant to open the trailer. Defendant responded that the trailer was not his and that Agent McCormick could go ahead and open it. Agent McCormick, using his tools, struggled to remove the calking. Noticing the trouble the agents were having, Defendant offered Agent McCormick one of his tools to assist in opening the trailer. After the calking was removed, Agent McCormick discovered marijuana wrapped in packaging tape and plastic. Defendant was then placed under arrest.

1  **II. Discussion**
2  **A. Standing**
3      **1. Position of the Parties**
4  It is the government's contention that Defendant lacks standing to challenge the
5  validity of the search because he does not have a reasonable expectation to privacy in the
6  land or trailer. (Doc. 15 at 2-4.) At oral argument and in Defendant's reply to the
7  government's response, Defendant argues that he was an overnight guest and had a
8  possessory interest in the trailer. Thus, Defendant contends he has standing to challenge the
9  admissibility of the evidence. (*Id*. at 50-51 and Doc 16 at 2.)
10     **2. Legal Standard**
11 The Fourth Amendment provides that "[t]he right of the people to be secure in their
12 persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be
13 violated." U.S. Const. Amendment. IV. The Fourth Amendment protects "people not places,"
14 *See Katz v. United States*, 389 U.S. 347, 351 (1967), therefore, it is incumbent upon a
15 defendant to demonstrate a "legitimate expectation to privacy" in the place searched or the
16 thing seized. *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). The capacity to claim the protection
17 of the Fourth Amendment depends not upon a property right in the invaded place but upon
18 whether the person who claims the protection of the Fourth Amendment has a legitimate
19 expectation of privacy in the invaded place. *Id*. at 143. A person's expectation to privacy is
20 legitimate if it is "one that society is prepared to recognize as reasonable." *Katz*, 389 U.S. at
21 361 (Harlan, J., concurring). Although not dispositive, one who owns or lawfully possesses
22 or controls property will in all likelihood have a legitimate expectation of privacy by virtue
23 of the right to exclude. *Rakas*, 439 U.S. at 143 n. 12. The Supreme Court has attempted to
24 elucidate these principles, holding that an overnight guest has a reasonable expectation to
25 privacy, *Minnesota v. Olsen*, 495 U.S. 91, 96 (1990), on the other hand, one's presence on
26 another's premises that is purely commercial in nature has no legitimate expectation to
27 privacy. *Minnesota v. Carter*, 525 U.S. 83, 90 (1998).
28 The various Circuit's have interpreted the *Rakas* holding, to extend Fourth

1  Amendment protections to individuals who can demonstrate that although they are not the
2  owner of the car searched, they have a sufficient possessory interest in the vehicle granting
3  them a reasonable expectation to privacy. The Ninth Circuit has held that a defendant must
4  show that they personally have "a property interest protected by the Fourth Amendment that
5  was interfered with ..., or a reasonable expectation of privacy that was invaded by the
6  search." *U.S. v. Padilla*, 111 F.3d 685, 688 (9th Cir.1997) (*quoting U.S. v. Padilla,* 508 U.S.
7  77, 82 (1993)). Cases from other circuits suggest that whether the driver of a car has the
8  reasonable expectation of privacy necessary to show Fourth Amendment standing is a fact-
9  bound question dependent on the strength of his interest in the car and the nature of his
10 control over it; ownership is not necessary. *U.S. v. Baker*, 221 F.3d 438, 442 (3rd Cir. 2000)
11 (a discrepancy between an individual's statement regarding the owner of the car he is driving,
12 and the identity of the owner of the car as reflected by the title and registration, is not
13 enough, by itself, to destroy the driver's reasonable expectation of privacy when there is clear
14 evidence of continuing possession and control, as well as no evidence that the driver obtained
15 the car illegitimately); *United States v. Angulo-Fernandez,* 53 F.3d 1177, 1179 (10th Cir.
16 1995) (driver who was able to produce registration papers in the name of the person from
17 whom he claimed to have borrowed the car had standing).

18 **3. Defendant has standing to challenge the admissibility of evidence from the
19 trailer**

20 At the suppression hearing, Agent McCormick testified that during his
21 conversation with Defendant, Defendant told him that Defendant was on the premises to
22 build a structure and clean the property. (Transcript at 14, 30.) After the arrest, Agent
23 McCormick discovered personal effects inside the white truck as well as inside a small
24 shed-like structure on the property, all indicating that Defendant was staying overnight on
25 the property. (*Id*. at 31). Based on the testimony of Agent McCormick, Defendant had a
26 legitimate right to be on the premise and was an overnight guest. Therefore, Defendant
27 had a reasonable expectation to privacy on the property. *Olsen*, 495 U.S. at 96.
28

1     In addition to having a legitimate expectation to privacy on the land, Defendant
2 has a demonstrated a reasonable expectation to privacy in the trailer. Agent McCormick's
3 inquiry into ownership of the trailer revealed that Defendant was borrowing the trailer
4 from a friend named Floyd to remove garbage from the property. (Transcript at 15.)
5 While Agent McCormick confirmed that both the trailer and white truck were registered
6 to Floyd Flores, Defendant was in possession of and using the trailer at that time. (*Id*. at
7 15-16.) Agent McCormick testified that after running the license plate and confirming the
8 identity of Floyd Flores as the registered owner, he proceeded to question Defendant,
9 instead of calling the owner, because the Defendant was in possession of the trailer. (*Id*. at
10 30.) The trailer was located on the property next to the small structure where the
11 Defendant was working (*Id*. at 50.) Agent McCormick was aware that the truck and trailer
12 were the property of Floyd Flores but nevertheless proceeded with the investigation by
13 questioning Defendant. (*Id*. at 15.) Defendant has established a possessory interest in the
14 trailer and the truck due to the fact that the registered owner gave permission to
15 Defendant to operate the vehicle and because Defendant was in possession and control of
16 the trailer at the time of the investigation. Accordingly, Defendant had a legitimate
17 expectation to privacy in the trailer. *Padilla*, 111 F.3d at 688. Defendant's control and
18 temporary possessory interest in the property is sufficient to establish standing, therefore,
19 Defendant may challenge the validity of the search.

20 **B. Consent to enter the property and  search the trailer**

21     **1. Position of the Parties**

22     The government argues in the event this Court finds Defendant has a sufficient
23 possessory interest in the trailer that the search was still constitutional because the agents
24 were given  consent by Defendant to search the premises. (Transcript at 47-48.) In
25 opposition, Defendant argues: (1) the agents failed to obtain consent from Defendant to
26 search the trailer; and (2) if there was consent, the consent was involuntary. (*Id*. at 54-55.)
27     **2. Legal Standard**
28

Warrantless searches pursuant to voluntary consent have been held to be constitutionally permissible. *Katz*, 389 U.S. at 358. "A search pursuant to consent may result in considerably less inconvenience for the subject of the search, and, properly conducted, is constitutionally permissible and wholly legitimate aspect of effective police activity." *Schneckloth v. Bustamonte*, 412 U.S. 218, 228 (1973). The Court, in *Schneckloth*, articulated the rule governing voluntary consent searches:

> when the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent.

*Id.* at 248-49. The burden is on the government to prove that the consent was in fact freely and voluntarily given. *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968). It need do so, however, only by a preponderance of the evidence, *U.S. v. Matlock*, 415 U.S. 164, 177 n. 14 (1974), and hearsay may be considered in determining the voluntariness of the consent. *Id.* at 172-178. Neither, mere non-resistance to a search, *U.S. v. Shaibu*, 970 F.2d 1423 (9th Cir. 1990), nor acquiescence to a claim of lawful authority necessarily constitutes consent. *Bumper*, 391 U.S. at 548-49.

**3. Defendant freely and voluntarily consented to the search of the trailer**

Defendant argues that the evidence must be suppressed under two theories. First, the record does not adequately demonstrate that consent was clearly given; defense argues that, in fact, consent was glossed over. (Transcript at 55.) Agent McCormick's testimony clearly indicates that he never entered the property until consent to do so was obtained from the Defendant. (*Id.* at 14.) Agent McCormick was following a foot trail that bordered the perimeter of the property, and as he walked by, he noticed an after-market enclosed frame on the trailer. (*Id.* at 13-14.) Agent McCormick was standing on the other side of the fence when he asked permission to take a closer look at the trailer, which

Defendant replied by saying, "go ahead, you can come on." (*Id.* at 14.)

While Agents McCormick and Gardella questioned Defendant, Defendant's brother pulled up in the white truck that was pulled over earlier in the day by border patrol agents. (*Id.* at 16.) It was at this point that Agent McCormick told Defendant that he suspected the trailer of having drugs in the after-market compartment and wished to perform a K-9 sniff on the vehicle. Defendant consented to the K-9 sniff. (*Id.* at 17.) The Defendant granted Agent McCormick permission to call the K-9 unit, then retired to the shack with his brother to have some dinner while awaiting the unit. (*Id.* at 17, 33.) The record adequately reflects a verbal consent by Defendant to admit the agents onto the property (*Id.* at 14.), call in a K-9 unit (*Id.* at 17), and search the trailer after the K-9 sniff alarmed the agents to the possible presence of narcotics in the back of the trailer. (*Id.* at 19.)

Second, defense argues that despite Defendant's verbal consent to the search; the consent was involuntary. The encounter began when Defendant approached Agents McCormick and Gardella, and engaged in a casual conversation about aliens crossing the property that day. Noticing a foot sign, the agents followed the trail while paying close attention to walk the perimeter of the property and did not enter the premises until permission had been granted by Defendant. Once Agent McCormick expressed an interest in investigating the trailer, Defendant declared, "it's not my trailer, I borrowed it," therefore, he had knowledge of the Agents intent to further inquire with regard to the trailer and willingly aided in the investigation by admitting them onto the property. The purpose of gaining Defendant's consent was to expedite the investigation of the trailer and limit inconvenience to both Defendant and the border patrol agents. *Schneckloth*, 412 U.S. at 228.

Upon investigation, Agent McCormick's suspicion was further aroused by the arrival of the previously identified white truck. The agent articulated to Defendant his suspicion and desire to either confirm or dispel his apprehension of the presence of

narcotics in the after-market compartment of the trailer. (Transcript at 17.) Agent McCormick made his intent clear and Defendant was free to not consent to the K-9 search. The prosecution is not required to demonstrate that Defendant had the subjective knowledge of the right to refuse, rather, the inquiry is to determine voluntariness according to a totality of the circumstances. *Schneckloth*, 412 U.S. at 248-49.  Defendant was not in custody, agents never told him that he was not free to leave, weapons were never displayed, and the conversation proceeded in a very casual atmosphere. (*Id*. at 17-18.)  While the agents awaited the K-9 unit, Defendant and his brother retired to the shack on the property to sit down and have dinner. (Transcript at 33.) Although, not his property, Defendant was not in a coercive environment and was granted amenities due to his voluntary cooperation in the investigation. The agents admittance onto the property and request to administer a K-9 sniff was granted by voluntary consent.

The K-9 inspection alerted the agents to the possibility of narcotics in the back of the trailer. At that point, the agents asked and received Defendant's consent to search the trailer.  Agent McCormick then began unhitching the bumper to remove the after-market compartment but was unable to do so with his own tools.  Without asking for help, Defendant approached Agent McCormick with one of his own tools to aid the agent in removing the compartment. (Transcript at 19-20.) Defendant not only verbally gave permission to the border patrol agents to enter the premises and search the trailer, but aided in the process by providing tools to a struggling agent.

Through the testimony of Agent McCormick, the government has shown verbal consent by the Defendant and a willingness by Defendant to help in the search. *Schneckloth*, 412 U.S. at 248-49. The following circumstances heavily weigh in finding that the consent was voluntary: the congenial nature of the conversation between Defendant and agents throughout their entire interaction; Defendant on three different occasions gave agents consent to proceed with the investigation; the non-coercive environment as evidenced in part by Defendant eating dinner while waiting for the K-9 unit; and the fact that Defendant provided a tool to assist Agent McCormick in the search

of the trailer. The government has met its burden of proof by demonstrating by a preponderance of the evidence that Defendant freely and voluntarily consented to the search of the trailer. *Matlock*, 415 U.S. at 177 n. 14.

### III. Recommendation

For the reasons outlined above, the Magistrate Judge recommends that the District Judge after his independent review and analysis, DENY Defendant's Motion to Suppress. (Doc 9).

Pursuant to 28 U.S.C. § 636(b), any party may serve and file written objections within ten days of being served with a copy of the Report and Recommendation. If objections are not timely filed, they may be deemed waived. The parties are advised that any objections filed are to be identified with the following case number: **cr-08-0300-DCB**.

The Clerk is directed to mail a copy of the Report and Recommendation to Plaintiff and counsel for Defendant.

DATED this 7th day of July, 2008.

_____
CHARLES R. PYLE
UNITED STATES MAGISTRATE JUDGE